## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Jeff Bell,**

    **Plaintiff,**

**v.**            **Case No. 15-9857-JWL**

**Ryan Transportation Service, Inc.,**

    **Defendant.**

### <u>MEMORANDUM & ORDER</u>

Plaintiff Jeff Bell filed this wage and hour suit individually and on behalf of all other similarly situated employees alleging violations of the overtime pay provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq.  Defendant Ryan Transportation Service, Inc. has moved to dismiss or stay the case and to compel arbitration on the grounds that plaintiff's complaint was filed in contravention of the terms of a valid and enforceable arbitration agreement executed by the parties that covers the claims asserted by plaintiff.  As a threshold matter, plaintiff contends that the court lacks jurisdiction to compel arbitration because the Federal Arbitration Act exempts transportation workers from its provisions.  In the alternative, plaintiff contends that the court should strike as unenforceable certain discovery, attorney fee and confidentiality provisions in the agreement because those provisions prevent him from effectively vindicating his rights under the FLSA and that the court should strike as unenforceable the class action waiver and confidentiality provision as violative of the National Labor Relations Act.  As will be explained, the court grants the motion to compel arbitration and stays the judicial proceedings in this case pending completion of the arbitration process.

*Factual Background*

Defendant Ryan Transportation Service, Inc. is a third-party logistics company specializing in transportation management and freight services. Defendant acts as an intermediary between shippers, who have freight that needs to be moved by truck, and trucking companies willing to haul freight. Defendant operates no trucks of its own and ships no freight of its own. Plaintiff Jeff Bell was employed by defendant from July 2013 until his resignation in January 2015. At the time he started his employment with defendant, plaintiff signed a "Mandatory Arbitration Agreement," which will be described in more detail below.

During his employment, plaintiff worked as a Carrier Sales Representative and as a Carrier Sales Team Lead. As a Carrier Sales Representative, plaintiff's duties involved locating a trucking company to transport a specific load for a shipper and negotiating the price that would be paid to the trucking company for transporting that load. Plaintiff avers that he communicated closely with drivers while those drivers were transporting freight so that he could keep the shippers and those parties who were receiving freight advised about the progress of a delivery. Plaintiff further avers that he also kept in close contact with drivers' dispatchers to resolve any issues relating to potential delays in deliveries. According to plaintiff, he was responsible for monitoring the progress of drivers in his network to ensure timely and efficient delivery and for communicating any customer requirements to drivers to ensure compliance with those requirements. As a Carrier Sales Team Lead, plaintiff's duties included managing a team of Carrier Sales Representatives and performing the same duties as the Carrier Sales Representatives.

*Standard and Applicable Law*

Defendant's motion is brought pursuant to Section 2 of the Federal Arbitration Act, described by the Supreme Court as the "primary substantive provision of the Act," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24 (1983), which provides that:

> [a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The Supreme Court has described Section 2 of the FAA as "reflecting both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract.'" *Nesbitt v. FCNH, Inc*., 811 F.3d 371, 376 (10th Cir. 2016) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Id*. (quoting *Concepcion*, 563 U.S. at 339).

That said, the final phrase of Section 2, often referred to as the "saving clause," "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id*. (quoting *Concepcion*, 563 U.S. at 339) (further quotation omitted). Federal courts have also recognized what is referred to as the "effective vindication" exception to the FAA. *Id*. at 376-77 (quoting *Am. Express Co. v. Italian Colors Rest*., ⸺ U.S. ⸺, 133 S. Ct. 2304, 2310 (2013)). This exception "originated as dictum in *Mitsubishi Motors* [*Corp. v. Soler Chrysler–Plymouth, Inc*., 473 U.S. 614 (1985)], where [the Supreme Court] expressed a willingness to invalidate, on

3

'public policy' grounds, arbitration agreements that 'operat[e] . . . as a prospective waiver of a party's right to pursue statutory remedies.'" *Id.* at 377 (quoting *American Express Co.*, 133 S. Ct. at 2310 (further quotation omitted). The Tenth Circuit recently applied this exception, noting the Supreme Court's acknowledgement that the exception "would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights," and "would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable." *Id.* (quoting *American Express Co.*, 133 S. Ct. at 2310–11).

*Transportation Worker Exemption*

The threshold issue in this case involves not the FAA's coverage provision found in Section 2 of the Act, but the FAA's exemption clause found in Section 1. The FAA expressly provides that it does not apply to "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. In *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001), the Supreme Court interpreted this provision as exempting contracts of employment of "transportation workers," but not other employment contracts, from the FAA's coverage. *Id.* at 109. In an effort to demonstrate the limitations of the exclusion provision by way of example, the Supreme Court quoted the District of Columbia Circuit Court of Appeals decision in *Cole v. Burns International Security Services*, 105 F.3d 1465, 1471 (D.C. Cir. 1997), in which the Circuit held that the "transportation worker" exemption is limited to those workers "actually engaged in the movement of goods in interstate commerce." *Circuit City Stores*, 532 U.S. at 112 (quoting Cole, 105 F.3d at 1471).

4

In his submissions, plaintiff concedes that the exemption is limited to those workers "actually engaged in the movement of goods in interstate commerce." *See McWilliams v. Logicon, Inc.*, 143 F.3d 573, 576 (10th Cir. 1998) (Section 1 exemption includes only those employees "actually engaged in the channels of interstate commerce" or who "directly affect the channels of commerce"). Plaintiff does not dispute that he is, at a minimum, one step removed from the actual physical movement of goods in interstate commerce. Nonetheless, he contends that he falls within the exemption because, as a freight broker employed by a logistics company specializing in transportation management services, he supervised drivers who were physically transporting good across state lines.[1] As will be explained, the court concludes, based on the undisputed facts, that plaintiff's job duties are not sufficiently necessary and related to interstate commerce as to classify him as a transportation worker for purposes of the exemption.

In the absence of any Tenth Circuit precedent, the court looks first to the Eighth Circuit's opinion in *Lenz v. Yellow Transportation, Inc.*, 431 F.3d 348 (8th Cir. 2005). In *Lenz,* the Eighth Circuit set out an eight factor test in order to determine whether a transportation industry employee is a "transportation worker" under the FAA. *Id.* at 352 (citations omitted). The *Lenz* court's non-exclusive factors include: whether the employee works in the transportation

---

[1] Although the parties' arbitration agreement gives the arbitrator the exclusive authority to resolve any dispute relating to the applicability of the agreement, neither party suggests that the exemption issue should be left for the arbitrator to decide. *Compare Green v. SuperShuttle Intern, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011) (issue of whether transportation worker exemption applied must be decided by arbitrator where parties agreed that arbitrator would decide threshold issues of arbitrability) *and Oliveira v. New Prime, Inc.,* 2015 WL 6472248, at *6-7 (D. Mass. 2015) (rejecting Green because questions regarding statutory exemptions are not gateway questions and the court has no authority to compel arbitration if the underlying contract is exempt).

industry; whether the employee is directly responsible for transporting goods in interstate commerce; whether the employee handles goods that travel interstate; whether the employee supervises employees who are themselves transportation workers; whether like seamen or railroad employees, the employee is within a class of employees for which special arbitration already existed when Congress enacted the FAA; whether the vehicle itself is vital to the commercial enterprise of the employer; whether a strike by the employee would disrupt interstate commerce; and the nexus that exists between the employee's job duties and the vehicle the employee uses in carrying out his duties. *Id.*

Applying those factors, the Eighth Circuit held that a customer service representative for a "carrier of general commodities by truck" was not a transportation worker for purposes of the FAA's exemption. *See id.*  In so holding, the Circuit emphasized that, as a customer service representative responsible for fielding phone calls from customers, the plaintiff never directly transported goods; had no "direct" responsibility for transporting goods; never handled any packages that moved interstate; did not directly supervise drivers in interstate commerce but rather provided information services to customers calling the defendant; did not operate any vehicles for defendant; and was not within a class of workers for which special arbitration already existed at the time the FAA was enacted. *Id.* at 352-53.  As the Circuit further explained:

> [A] strike by commercial service representatives, while inconvenient for Yellow, would not disrupt interstate commerce or halt trucks from delivering the general commodities. . . .  [R]egarding the nexus between Lenz's job duties and interstate commerce, Lenz did have a duty to "coordinate freight flow by expediting movement of shipment [*sic*] and contacting terminal and/or central dispatch" and to "make decisions, as necessary, following the philosophy of 'what is the right thing to do;'" however, taking his job duties as a whole, Lenz's central task was to

6

answer the questions of and provide information to Yellow customers, not to
supervise packages moving in interstate commerce.

*Id*. at 353.

Plaintiff's job duties as a Carrier Sales Representative are analogous to those examined
by the Eighth Circuit in *Lenz*.  Plaintiff did not directly transport goods, did not handle packages
or freight, had no direct responsibility for transporting freight; and did not operate any vehicles
for defendant.  While plaintiff contends that he "supervised drivers," the evidence reflects that
plaintiff simply communicated by telephone with drivers and customers to obtain and relay
information between drivers and customers.  Moreover, plaintiff was not employed by the same
company as the drivers—he was employed by a logistics company.  While plaintiff, like the
plaintiff in *Lenz*, helped to coordinate the flow of freight in interstate commerce, there is no
evidence that plaintiff had any responsibility for the freight itself.  And, like the facts in *Lenz*,
plaintiff was not within a class of workers for which special arbitration already existed at the
time the FAA was enacted and a strike by Carrier Sales Representatives at a third-party logistics
company would not stop trucks from shipping freight between shippers and receivers.

The court is also persuaded by the district court's decision in *Morning Star Associates,
Inc. v. Unishippers Global Logistics, LLC*, 2015 WL 2408477 (S.D. Ga. 2015).  In that case, the
plaintiffs were essentially "freight brokers" responsible for processing customers' shipments via
common carrier and assisting with pricing and other aspects of the shipping transaction.  *Id*. at
*1.  The district court, unable to find any authority for "extending the 'transportation worker'
exemption to those working as freight brokers in the logistics field," declined to hold that a
logistics worker is a transportation worker for purposes of the exemption.  *Id*. at *7.  Looking to

Lenz for guidance, the district court concluded that, as freight brokers, the plaintiffs were not directly responsible for transporting goods and did not have supervisory authority over truck drivers aside from calling drivers to insure the efficient and timely delivery of packages. *Id*. at *8. The district court also found it significant that a strike by plaintiffs would not disrupt interstate commerce in any way; that plaintiffs were not part of a class of employees for which special arbitration already existed; and could readily perform their duties without a vehicle. *See id.* The court in *Morning Star*, then, specifically rejected the argument advanced by plaintiff here and held that calling drivers to coordinate the timely delivery of packages does not constitute "supervising" drivers for purposes of the exemption.

In support of his argument, plaintiff relies on *Palko v. Airborne Express Inc*., 372 F.3d 588 (3d Cir. 2004) and *Zamora v. Swift Transportation Corporation*, 2008 WL 2369769 (W.D. Tex. 2008). Those cases, however, presented facts that are not found here. In both cases, the plaintiffs worked for large trucking companies. In *Zamora*, the plaintiff was a Terminal Manager who was directly responsible for the overall success and profitable operation of defendant's terminal, which included supervision over all trucks and all drivers. 2008 WL 2369769, at *7. The plaintiff also averred that he periodically drove for the defendant to move trucks to other locations and to pick up equipment. *See id*. The district court also determined that a strike by terminal managers would have a negative effect on the ability of trucking companies to function. *Id*. at 8. Similarly, the plaintiff in *Palko*, a Field Services Supervisor, was responsible for the performance of nearly 35 truck drivers—also employed by Airborne Express—under her immediate supervision. 372 F.3d at 590. Finding that the plaintiff was responsible for "direct supervision of package shipments," the Third Circuit agreed with the

8

district court that the plaintiff was a transportation worker for purposes of the FAA's exemption. *Id.* at 593.  These cases, then, do not persuade the court that plaintiff's work "was so closely related to interstate commerce as to be in practical effect part of it."  *Id.* (quoting *Tenney Engineering, Inc. v. United Electrical Radio & Machine Workers of America*, 207 F.2d 450, 452 (3d Cir. 1953)).

For the foregoing reasons, the court concludes that plaintiff does not fall within the "transportation worker" exemption found in Section 1 of the FAA.

*Discovery, Attorney Fee and Confidentiality Provisions*

In light of the court's holding that plaintiff is not exempt from the FAA, the court turns to plaintiff's alternative argument—that the court should strike as unenforceable certain discovery, attorney fee and confidentiality provisions in the agreement because those provisions prevent him from effectively vindicating his rights under the FLSA.  The arbitration agreement executed by the parties limits pre-arbitration discovery to twenty (20) interrogatories by each party; twenty (20) requests for production of documents by each party; and three (3) depositions by each party, limited to 8- or 4-hours in duration depending on whether the witness is a party. Arbitration Agreement ¶ 17.  The agreement further provides that the parties may agree to additional discovery and, if an agreement cannot be reached, the arbitrator "may, upon written request, provide for additional discovery."  *Id.*   Plaintiff contends that the court should strike these "substantial" limitations because they will prevent him from a full and fair exploration of the issues in dispute.  Of course, it is not at all surprising that the discovery procedures in the parties' agreement are not as extensive as in federal court—a party "trades the procedures  . . . of

the courtroom for the simplicity, informality, and expedition of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628 (1985).  Moreover, the agreement does not prohibit any particular discovery device that would be available to plaintiff in federal court and plainly permits the arbitrator to provide for additional discovery at his or her discretion.  In such circumstances, the court cannot conclude that the discovery provisions in the parties' agreement are sufficiently restrictive to deny plaintiff a fair opportunity to present his claims.  *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (ADEA claim must proceed to arbitration despite discovery limitations in agreement); *Hermida v. JP Morgan Chase Bank, N.A.*, 2015 WL 6739129, at *4 (D. Or. Nov. 3, 2015) (arbitration agreement limiting parties to three depositions did not prevent plaintiff from vindicating statutory rights where agreement gave arbitrator ability to extend scope of discovery); *Poublon v. C.H. Robinson Co.*, 2015 WL 588515, at *10-12 (C.D. Cal. Jan. 12, 2015) (provision in arbitration agreement that limited discovery to the exchange of relevant documents and three depositions per side was not unconscionable where arbitrator could grant additional discovery under "good cause" standard) (FLSA misclassification/overtime case); *Southerland v. Corporate Transit of America*, 2014 WL 4906891, at *8 (E.D. Mich. Sept. 30, 2014) (discovery provision in arbitration agreement limiting each party to three depositions was not unreasonable and "far from uncommon" in arbitration) (FLSA misclassification/overtime case).[2]

---

[2] Plaintiff's reliance on *Fitz v. NCR Corporation*, 118 Cal App. 4th 702 (2004) is misplaced.  In that case, the Court of Appeals affirmed the California superior court's decision denying a motion to compel arbitration in part because the agreement significantly limited discovery and did not permit the arbitrator to allow for additional discovery unless he or she found a "compelling need" for it.  *Id*. at 709.  The agreement further measured a "compelling need" as

Plaintiff's challenge to the agreement's attorney fee provision fares no better.  The agreement provides that the arbitrator "may grant any remedy or relief that would otherwise be available to the party claiming to be aggrieved in a court of competent jurisdiction, including where available and found to be applicable, an award of punitive damages and/or an award of reasonable attorney's fees and expenses to the prevailing party."  Arbitration Agreement ¶ 18. According to plaintiff, this provision leaves an award of fees to the discretion of the arbitrator despite the mandatory fee-shifting provision of the FLSA.  Plaintiff contends that the provision leaves employees without any confidence that they will be awarded fees if they prevail and that the uncertainty is amplified by other provisions in the agreement suggesting that the employee is responsible for paying his or her own attorney's fees.  *See* Arbitration Agreement ¶ 15 ("Each party may be represented by an attorney, at the party's own cost, at all stages and/or proceedings of any mediation or arbitration covered by this Agreement.") & ¶ 16 (in addition to initial filing fee, employee responsible for paying his or her attorney's fees, travel expenses and witness fees for any witness called to testify by employee; company pays all other arbitration fees).

In support of his argument, plaintiff relies exclusively on the Tenth Circuit's opinion in *Nesbitt v. FCNH, Inc.*, 811 F.3d 371 (10th Cir. 2016).  In that case, the Circuit affirmed the denial of a motion to compel arbitration on the grounds that certain provisions in the arbitration agreement executed by the plaintiff prevented her from effectively vindicating her statutory rights under the FLSA.  Pertinent to the discussion here, the agreement, which consisted of only one paragraph, expressly explained that it "LIMITS . . . THE RIGHT TO CERTAIN

---

whether a "fair hearing" was "impossible" without the additional discovery.  *Id.*  Here, there are no constraints whatsoever on the arbitrator's ability to allow additional discovery.

REMEDIES AND FORMS OF RELIEF" and that "OTHER RIGHTS THAT YOU . . . WOULD HAVE HAD IN COURT ALSO MAY NOT BE AVAILABLE IN ARBITRATION." *Id.* at 374.  The agreement further provided that each party "shall bear the expense of its own counsel, experts, witnesses, and preparation and presentation of proofs."  *Id*.  In denying a motion to compel arbitration, the district court held, among other things, that requiring the plaintiff to bear the costs of her own counsel "even should she prevail" violated public policy because "it amounted to a prospective waiver of a statutory remedy while simultaneously undermining the enforcement scheme erected by the FLSA."  *Id.* at 375-76.

On appeal, the defendant argued that the district court had misinterpreted the agreement when it concluded that the agreement precludes an arbitrator from awarding attorneys' fees to a prevailing claimant.  *Id.* at 380.  While the defendant conceded that the agreement required a claimant to bear initially the expense of her own counsel, defendant argued that the agreement made a fee award available because it required the arbitrator to apply federal law "to the fullest extent possible" and by incorporating the AAA Commercial Rules which expressly allow for post-award fee shifting.  *See id.*  Affirming the district court, the Tenth Circuit held that the agreement was internally inconsistent and, thus, ambiguous regarding the availability of a fee award.  *Id*.  As explained by the Circuit, the agreement on the one hand expressly stated that each party was required to bear the expense of its own counsel and that remedies and relief otherwise available in court would be limited by the agreement, but on the other hand appeared to authorize an arbitrator to include attorneys' fees in an award if the plaintiff prevailed.  *See id.*

In light of the resulting ambiguity, the Circuit held that the district court properly refused to compel arbitration of the plaintiff's claim. *See id*. at 380-81.[3]

Unlike the agreement in *Nesbitt*, nothing in the agreement before the court expressly limits the remedies or relief available in arbitration.  In fact, as highlighted by defendant, the agreement expressly provides that "all responsibilities of the parties under the statutes applicable shall be strictly enforced."  Arbitration Agreement ¶ 5.  Thus, because defendant is responsible under the FLSA for paying plaintiff's attorney's fees if she prevails on her claim, the agreement mandates that defendant be responsible for paying those fees if plaintiff prevails at arbitration.  While the agreement certainly contemplates that a claimant would, at least initially, be required to bear his or her own attorneys' fees, that requirement is obviously no different than a plaintiff would face in court.  With respect to plaintiff's argument that the permissive language used in Paragraph 18 of the Agreement is inconsistent with the mandatory fee-shifting provisions in the FLSA, plaintiff directs the court to no cases suggesting that such language is sufficient to render an agreement unenforceable.  The court's own research reveals that courts have uniformly rejected this argument for various reasons, including the persuasive reason that such language simply contemplates those statutes which allow but do not require an award of fees.  *See Smith v. Vmware, Inc*., 2016 WL 54120, at *6 (N.D. Cal. 2016) (construing AAA rule that arbitrator "may" grant any remedy . . as requiring fee award to plaintiff consistent with mandatory fee-shifting provision of FLSA); *Irasena v. Chalak M&M AR1 LLC*, 2015 WL 4498227, at *5 (E.D.

---

[3] Significantly, the primary basis for the Circuit's decision in *Nesbitt* was the fact that the agreement, which required that arbitration be conducted under the Commercial Rules of the American Arbitration Association, required the plaintiff to split the cost of arbitration with the defendant—a provision that could have caused the plaintiff to incur as much as $12,500 in costs simply paying for the arbitrator's time. *Id*. at 375.

Ark. 2015) (arbitration agreement not unconscionable despite provision stating that arbitrator "may" award fees to prevailing party; if plaintiffs prevailed and arbitrator failed to award fees, award could be vacated); *Clerk v. First Bank of Delaware*, 735 F. Supp. 2d 170, 185 (E.D. Pa. 2010) (contested language contemplates statutes which allow but do not require an award of fees; nothing in agreement prevented arbitrator from awarding fees when required by statute and agreement required arbitrator to apply relevant substantive law); *Sage Popovich, Inc. v. Colt Int'l, Inc.*, 588 F. Supp. 2d 913, 917-18 (N.D. Ind. 2008) (plaintiff's claim that agreement, by making award of fees discretionary despite mandatory fee-shifting provision in statute, improperly limited plaintiff's remedies was premature where court could not speculate how arbitrator would construe provision).

The court also rejects plaintiff's challenge to the confidentiality provision of the arbitration agreement.  In that regard, paragraph 23 of the parties' agreement provides that "neither a party nor an arbitrator may disclose the existence, content, or results of any arbitration" without the consent of both parties or except as required by law.  Plaintiff contends that this provision is unenforceable because it limits his ability to interview potential witnesses by precluding him from explaining the purpose of the interview.   As defendant highlights in its reply, however, plaintiff's lawsuit is a matter of public record and the provision clearly does not preclude plaintiff from advising potential witnesses (or anyone else, for that matter) that he is engaged in a dispute with defendant over its pay practices.  Defendant also expressly consents in its reply that plaintiff may disclose the existence of the arbitration when interviewing witnesses

14

in pursuit of evidence to support his claim.  In the absence of any other objection to the confidentiality provision,[4] the court will not strike the provision as unenforceable.

*Enforceability of Class Action Waiver/Confidentiality Provision Under NLRA*

In addition to the confidentiality provision discussed above, the arbitration agreement contains a class action waiver prohibiting plaintiff from arbitrating claims on behalf of a class or from consolidating his claims with any other individual.  Arbitration Agreement ¶ 11.  Plaintiff contends that these provisions unlawfully restrict employees' rights under the National Labor Relations Act as expressly held by the National Labor Relations Board in *D.R. Horton, Inc*., 357 NLRB No. 184 (Jan. 3, 2012) (employer violates Section 8(a)(1) of the NLRA by requiring employees to sign an arbitration agreement waiving their right to pursue class and collective claims) and reaffirmed by the Board in *Murphy Oil USA, Inc*., 361 NLRB No. 720 (Oct. 28, 2014).  Plaintiff asks the court to defer to these decisions and strike those provisions as unenforceable.  The court declines to do so.

In December 2013, the Fifth Circuit, on a petition for review of the Board's decision in *D.R. Horton*, rejected the Board's decision and held that the NLRA does not contain "a congressional command overriding" the Federal Arbitration Act and that the use of class action procedures is not a substantive right under the NLRA.  *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344, 357, 360-62 (5th Cir. 2013).  Essentially, then, the Fifth Circuit held that an employer does

---

[4] Plaintiff does not advance certain arguments addressed by other courts—including that the nature of FLSA claims require disclosure or that the confidentiality provision is substantively unconscionable because it gives an advantage to defendant as a "repeat player" with access to precedent while preventing future potential plaintiffs from building a case against defendant.

not engage in an unfair labor practice by maintaining and enforcing an arbitration agreement prohibiting employee class or collective actions and requiring employment-related claims to be resolved through individual arbitration. *Id*. at 362. In October 2015, the Fifth Circuit, on a petition for review of the Board's decision in *Murphy Oil*, rejected that aspect of the *Murphy Oil* decision that held that an employer violates the NLRA by enforcing agreements that require employees to agree to resolve all employment-related claims through individual arbitration. *Murphy Oil USA, Inc. v. NLRB*, 808 F.3d 1013, 1018 (5th Cir. 2015) (recognizing that the Board had disregarded the Circuit's contrary *D.R. Horton* ruling that such arbitration agreements are enforceable and not unlawful).

Like the Fifth Circuit, the overwhelming majority of courts that have addressed this issue have rejected the Board's decision in *D.R. Horton* after finding that the Board's decision conflicts with the explicit pronouncements of the Supreme Court concerning the policies underlying the Federal Arbitration Act. *See, e.g., Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 297 n.8 (2d Cir. 2013) (declining to follow Board's decision in *D.R. Horton* and rejecting argument that class action waiver violates the NLRA); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1053-54 (8th Cir. 2013) (same); *Patterson v. Raymours Furniture Co*., 96 F. Supp. 3d 71, 80 (S.D.N.Y. 2015); *Longnecker v. American Express Co.,* 23 F. Supp. 3d 1099, 1112-13 (D. Az. 2014); *Fardig v. Hobby Lobby Stores, Inc*., 2014 WL 2810025, at *7 (C.D. Cal. 2014); *Hickey v. Brinker Int'l Payroll Co*., 2014 WL 622883, at *2 (D. Colo. 2014); *see also Murphy Oil USA, Inc.,* 361 NLRB No. 72, 2014 WL 5465 (October 28, 2014) (Member Johnson, dissenting and identifying nearly 40 cases in which courts have rejected the "unusual approach" of the Board and have joined in the "near universal condemnation" of that approach).

The court firmly believes that the Tenth Circuit, if faced with this issue, would similarly reject the Board's decision in *D.R. Horton*. To begin, the Board's decision was limited to those arbitration agreements precluding all protected concerted action. The arbitration agreement before the court expressly permits an employee to file a complaint with the EEOC or any federal agency designated to investigate the employee's complaint. Arbitration Agreement ¶ 5. Under the agreement, then, plaintiff may still pursue a claim with the Department of Labor and nothing in the agreement prevents the Department of Labor from investigating plaintiff's claim and, if appropriate, filing suit on behalf of a class of employees. *See Owen*, 702 F.3d at 1053-54 (rejecting *D.R. Horton* in part because specific agreement at issue permitting filing complaint with agency and agency could pursue class claims). Moreover, the *D.R. Horton* decision is simply not persuasive in the face of "more than two decades of pro-arbitration Supreme Court precedent." *Id*. at 1054 (citing *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665 (2012); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011); *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20 (1991)). Finally, the court discerns no "contrary congressional command" in the text, legislative history or application of the NLRA suggesting that a right to engage in concerted activity overrides the mandates of the FAA in favor of arbitration. *See D.R. Horton*, 737 F.3d at 360-61. The court then rejects plaintiff's invitation to follow the NLRB's rationale in *D.R. Horton* and believes that the Circuit would similarly reject that invitation.

Plaintiff highlights just two district courts that have followed the Board's decision in *D.R. Horton*, those cases are not persuasive to the court. In *Herrington v. Waterstone Mortgage Corporation*, 993 F. Supp. 2d 940 (W.D. Wisc. Jan. 28, 2014), the district court had held, prior to the Fifth Circuit's December 2013 decision rejecting the Board's decision in *D.R. Horton*,

17

that the plaintiff's FLSA claim had to be resolved in arbitration but that the plaintiff, under the Board's decision, had the right to join other employees to her claims. *Id*. at 941. After the Fifth Circuit's opinion, the defendant in *Waterstone Mortgage* filed a motion to vacate under Rule 60(b)(6) that portion of the order permitting the plaintiff to join other employees to her claims. *See id*. The district court acknowledged that "the weight of authority . . . favors defendant's view," but nonetheless declined to vacate the order in the absence of "extraordinary circumstances" justifying relief under Rule 60(b)(6). *Id*. at 942 (a "change in law showing that a previous judgment may have been incorrect is not an extraordinary circumstance justifying relief under Rule 60(b)(6)). Without question, the court in *Waterstone Mortgage* was unconvinced by the Fifth Circuit's analysis in *D.R. Horton*, as was the court in the other case cited by plaintiff— *Totten v. Kellogg Brown & Root, LLC*, 2016 WL 316019 (C.D. Cal. Jan. 22, 2016)—but this court nonetheless remains persuaded by those Circuit Courts of Appeals which have addressed the issue and have permitted the use of class action waivers in arbitration agreements despite the Board's decision to the contrary.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Ryan Transportation Service, Inc.'s motion to compel arbitration (doc. 5) is **granted.** The parties are directed to proceed to arbitration of plaintiff's claims. The court will stay the judicial proceedings in this case pending completion of the arbitration process. Counsel for the parties are directed to report to the court in writing no later than **Monday, October 3, 2016** concerning the status of that arbitration in the event that it has not been terminated earlier. Failure to so report will lead to dismissal of this case for lack of prosecution.

**IT IS SO ORDERED.**


Dated this 31st day of March, 2016, at Kansas City, Kansas.


                                            s/ John W. Lungstrum
                                            John W. Lungstrum
                                            United States District Judge